JFM:WES/JAG/BDM
F.#2010R00609

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ AUG 0 4 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

MICHAEL METTER and
STEVEN MOSKOWITZ,

               Defendants.

- - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr **CR 10        600**
(T. 15, U.S.C., §§ 78j(b) and
78ff; T. 18, U.S.C., §§ 371,
981(a)(1)(C), 982, 1505,
1621(1), 1956(h), 2 and 3551
et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C.,
§ 2461(c))

ROSS, J.

CARTER, M.J.

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

     At all times relevant to this Indictment, unless otherwise indicated:

I.   <u>Background</u>

    A.   <u>Relevant Entities and the Defendants</u>

     1.   Spongetech Delivery Systems, Inc. ("Spongetech") was a Delaware corporation that maintained its principal offices in New York, New York.  Spongetech designed, produced, marketed and sold various cleaning care products, including pre-loaded soap sponges.

     2.   RM Enterprises International Ltd. ("RM Enterprises") was a Delaware corporation that maintained its principal offices in New York, New York.  RM Enterprises had

three shareholders and owned a significant percentage of
Spongetech's voting stock.

      3.    The defendant MICHAEL METTER was one of the three
shareholders of RM Enterprises and was a shareholder of
Spongetech.  From June 2001 through September 2007, METTER served
as President of RM Enterprises, and he was also Spongetech's
Chief Executive Officer and President.

      4.    The defendant STEVEN MOSKOWITZ was one of the
three shareholders of RM Enterprises and was a shareholder of
Spongetech.  MOSKOWITZ served as Chief Financial Officer of
RM Enterprises, and he was also Spongetech's Chief Operating
Officer, Chief Financial Officer, Chief Accounting Officer,
Treasurer and Secretary.

      5.    Together, the defendants MICHAEL METTER and STEVEN
MOSKOWITZ and a third individual owned – either directly or
indirectly — a controlling percentage of Spongetech's voting
stock.

     B.    <u>Restricted Stock, Unrestricted Stock, and Legal Opinion
Letters</u>

      6.    Restricted stock was stock that could not be sold
in the public market place.  Restricted stock was generally less
valuable than unrestricted stock.  Certificates for restricted
stock were typically stamped with a legend indicating that the
stock was restricted.

7.     If the restriction on the sale of the stock in the public market place no longer applied, the corporation's transfer agent would remove the restrictive legend from the stock certificate.  Transfer agents were used by corporations to, among other things, maintain records of investors, process investor mailings, and cancel and issue stock certificates.  Removal of the restrictive legend from a restricted stock certificate caused the stock to become unrestricted and enabled it to be freely sold.

8.     Before removing a restrictive legend from a stock certificate, a transfer agent typically required the holder of the stock to provide a letter from an attorney opining that the restriction no longer applied.  Such documents were known as legal opinion letters.

II.   The Fraudulent Scheme

9.     From approximately January 2007 to May 2010, the defendants MICHAEL METTER and STEVEN MOSKOWITZ, together with others, executed a fraudulent scheme to: (A) publicly report false and materially overstated sales figures to create artificial demand for, and increase the share price of, Spongetech common stock; (B) issue restricted Spongetech common stock to entities controlled by Spongetech; (C) use fraudulent means to unrestrict the stock; (D) sell the unrestricted stock in

the public market place; and (E) personally profit from the inflated stock sales.

   A.   The Public Reporting of False and Materially Overstated Sales Figures

      10.   As part of the fraudulent scheme, the defendants MICHAEL METTER and STEVEN MOSKOWITZ publicly reported false and materially overstated Spongetech sales figures.   Specifically, METTER and MOSKOWITZ reported that Spongetech had secured purchase orders from, or had made sales to, the following five customers: SA Trading Company, US Asia Trading, Dubai Export Import Company, New Century Media and Fesco Sales Corp.   The five customers, however, did not in fact exist, no such purchase orders were secured, and no such sales were made.

      11.   To publicize the phony Spongetech sales figures, the defendants MICHAEL METTER and STEVEN MOSKOWITZ filed and caused to be filed multiple reports with the United States Securities and Exchange Commission ("SEC") that disclosed to existing and potential investors false and materially overstated sales figures.   During that same period of time, METTER and MOSKOWITZ issued and caused to be issued numerous press releases — typically via the Internet — that announced to existing and potential investors false and materially overstated sales figures, as well as phony purchase orders and other false information.   The purpose of issuing such press releases was to

create artificial demand for Spongetech common stock and thereby increase its share price.

B. The Issuance of Restricted Spongetech Common Stock to Entities Controlled by Spongetech

12. Having fraudulently created artificial demand for Spongetech common stock, the defendants MICHAEL METTER and STEVEN MOSKOWITZ issued and caused to be issued large amounts of restricted Spongetech common stock to RM Enterprises and other entities controlled by Spongetech.

C. The Use of Fraudulent Means to Unrestrict the Stock

13. After the restricted Spongetech common stock was issued to RM Enterprises and other entities controlled by Spongetech, the defendants MICHAEL METTER and STEVEN MOSKOWITZ employed fraudulent means to have transfer agents unrestrict the stock. Specifically, the defendants furnished and caused to be furnished fraudulent legal opinion letters that falsely claimed exemptions from SEC registration. METTER and MOSKOWITZ, however, knew that no exemption applied. Relying on the fraudulent legal opinion letters, the transfer agents removed the restrictive legends from the Spongetech common stock certificates, thereby causing the stock to become unrestricted.

D.   The Sale of the Unrestricted Stock in the Public Market Place

14.   Once the Spongetech common stock became unrestricted, the defendants MICHAEL METTER and STEVEN MOSKOWITZ sold and caused to be sold large amounts of Spongetech common stock, most of which was ultimately sold in the public market place.

E.   The Defendants' Personal Profit from the Inflated Stock Sales

15.   The defendants MICHAEL METTER and STEVEN MOSKOWITZ collectively received millions of dollars during the course of their fraudulent scheme.

III.  The Obstruction of Justice

16.   In or about May 2009, the SEC commenced an investigation into Spongetech's publicly reported sales figures and financial statements.  The SEC issued subpoenas to Spongetech and the defendants MICHAEL METTER and STEVEN MOSKOWITZ as part of that investigation.  In response to those subpoenas, METTER and MOSKOWITZ furnished fabricated documents to the SEC.  METTER and MOSKOWITZ also testified before the SEC and repeatedly lied about Spongetech's sales figures and about the five customers identified in paragraph 10.

COUNT ONE
(Conspiracy to Commit Securities Fraud
and Obstruction of Justice)

17.   The allegations contained in paragraphs 1 through 16 are realleged and incorporated as though fully set forth in this paragraph.

18.   In or about and between January 2007 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MICHAEL METTER and STEVEN MOSKOWITZ, together with others, did knowingly and willfully conspire to:

a.   use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the SEC (Title 17, Code of Federal Regulations, Section 240.10b-5), by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and sales of Spongetech common stock, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, contrary to Title 15, United States Code, Sections 78j(b) and 78ff; and

b.   corruptly influence, obstruct and impede the due and proper administration of the law under which a pending proceeding, specifically an investigation by the Enforcement Division of the SEC, was being

7

had before the SEC, contrary to Title 18, United States Code, Section 1505.

19.   In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants MICHAEL METTER and STEVEN MOSKOWITZ, together with others, committed and caused to be committed, among others, the following:

<u>OVERT ACTS</u>

a.   On or about April 30, 2007, in a Spongetech press release, MOSKOWITZ stated as follows: "This is an exciting time for [Spongetech]. We look forward to finalizing our agreement with SA Trading Group Corp and beginning our sales and distribution into South America."

b.   On or about January 31, 2008, in a Spongetech press release, MOSKOWITZ stated as follows: "With support from companies like SA Trading, we should add significant new incremental revenues for [Spongetech] in 2008 and beyond."

c.   On or about January 9, 2009, METTER touted Spongetech's sales during an appearance on "MoneyTV," stating, among other things, that "we think that for the year that ends May 31st, 2009, that we are going to make around $7 million on $40 million in sales" and that Spongetech is "shipping all over the world."

d.   On or about September 28, 2009, METTER sent an email to another person, whose identity is known to the Grand Jury, requesting phony Spongetech customer telephone numbers that were to be provided to "the regulators."

(Title 18, United States Code, Sections 371 and 3551 <u>et seq</u>.)

8

COUNT TWO
(Securities Fraud)

20.   The allegations contained in paragraphs 1 through 16 are realleged and incorporated as though fully set forth in this paragraph.

21.   In or about and between January 2007 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MICHAEL METTER and STEVEN MOSKOWITZ did knowingly and willfully use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the SEC (Title 17, Code of Federal Regulations, Section 240.10b-5), in that METTER and MOSKOWITZ did knowingly and willfully (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and sales of Spongetech common stock, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

9

## COUNT THREE
(Obstruction of Justice)

22.   The allegations contained in paragraphs 1 through 16 are realleged and incorporated as though fully set forth in this paragraph.

23.   In or about and between September and October 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MICHAEL METTER and STEVEN MOSKOWITZ did knowingly and willfully corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede, the due and proper administration of the law under which a pending proceeding, specifically an investigation by the Enforcement Division of the SEC, was being had before the SEC.

(Title 18, United States Code, Sections 1505, 2 and 3551 et seq.)

## COUNT FOUR
(Conspiracy to Commit Money Laundering)

24.   The allegations contained in paragraphs 1 through 16 are realleged and incorporated as though fully set forth in this paragraph.

25.   In or about and between January 2007 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MICHAEL METTER and STEVEN MOSKOWITZ, together with others, did knowingly and

10

intentionally conspire to engage in monetary transactions, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, specifically, fraud in the sale of securities, contrary to Title 18, United States Code, Section 1957.

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### COUNT FIVE
(Perjury — MOSKOWITZ SEC Testimony)

26. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as though fully set forth in this paragraph.

27. On or about October 8, 2009, in the District of Columbia, the defendant STEVEN MOSKOWITZ, having taken an oath before a competent tribunal, officer and person, in a case in which the law of the United States authorizes an oath to be administered, specifically, in testimony before an officer of the SEC, that he would testify declare, depose and certify truly, did willfully and contrary to such oath state the following material matter which he did not believe to be true:

11

## SPECIFICATION ONE
### (Page 168, Line 19 - Page 170, Line 19)

Q.  What is the business of S.A. Trading?
                        *    *    *
A.  The best way to understand what was told to me when I
    first met them back at the auto show years ago, and
    they're probably one — you know — since the business
    got re-energized again, they've been one of our larger
    accounts and one of our first trading accounts that
    started up about — I don't know — maybe three years
    ago . . . .
                        *    *    *
Q.  And let me just clarify a few things that you said on
    your last response.  You said that you initially met
    folks from S.A. Trading at an auto show?
A.  Right.
Q.  And when was that?
A.  2007.
Q.  2007?
A.  Right.

## SPECIFICATION TWO
### (Page 179, Line 17 - Page 180, Line 3)

Q.  When you said you met them in 2007, who is them?
A.  S.A. Trading.  It's Carlos Vega.
                        *    *    *
Q.  Is he still with S.A. Trading?
A.  He is.

## SPECIFICATION THREE
### (Page 219, Lines 1-9)

Q.  [W]hat is [Ahmad Elsayed's] position at Dubai [Export
    Import Company]?
A.  He's the purchasing agent and traffic manager.
Q.  Have you ever met him?
A.  Actually Michael Metter introduced me to him.
                        *    *    *
Q.  And have you had any contact with him since [2007]?
A.  Yeah.  Recently a lot more.

12

## SPECIFICATION FOUR
### (Page 235, Line 15 - Page 236, Line 8)

Q.   I want to ask you to tell me whether these particular
     customers are still customers of Spongetech.  I'll just
     read the name and you tell me yes or no.  Dubai Export
     Import Company?
A.   They're still currently a customer.
Q.   Fesco Sales Corp.?
A.   They are still a customer.
                         *    *    *
Q.   New Century Media?
A.   Yes.
Q.   S.A. Trading Company?
A.   Yes.

## SPECIFICATION FIVE
### (Page 403, Line 9 - Page 404, Line 2)

Q.   [L]et's identify the six for the record.
A.   S.A. Trading.  All right.  So actually S.A. Trading, I
     believe I got a hold of [them] on Friday, all right,
     and let them know that somebody was going to be calling
     them.
Q.   Who did you talk to at S.A. Trading?
A.   I talked to Carlos Varga?
Q.   Varga?
                         *    *    *
A.   Vega, Varga.  They call him Varga.
                         *    *    *
Q.   So you talked to him on that Friday?
A.   Right.  And then I also spoke to Mr. Chin on Friday.
Q.   And he is with U.S. —
A.   Yeah, he's in Asia Trading.
Q.   — or United Asia Trading?
A.   Right.

## SPECIFICATION SIX
### (Page 413, Line 24 - Page 414, Line 6)

Q.   Fesco, did you talk to anyone at Fesco on Tuesday?
A.   Mr. Rogers.
Q.   Mr. Rogers.  Can you describe that conversation?
A.   That conversation was pretty straightforward.  It's —
     he basically, you know, didn't want us giving out his
     number to anyone.  But I told [him] he has to be
     cooperative.

```
Q.   And what did he say?
A.   He said he would take it under advisement.
```

(Title 18, United States Code, Sections 1621(1), 2 and 3551 et seq.)

## COUNT SIX
### (Perjury — METTER SEC Testimony)

28.   The allegations contained in paragraphs 1 through 16 are realleged and incorporated as though fully set forth in this paragraph.

29.   On or about October 13, 2009, in the District of Columbia, the defendant MICHAEL METTER, having taken an oath before a competent tribunal, officer and person, in a case in which the law of the United States authorizes an oath to be administered, specifically, in testimony before an officer of the SEC, that he would testify declare, depose and certify truly, did willfully and contrary to such oath state the following material matter which he did not believe to be true:

### SPECIFICATION ONE
### (Page 211, Lines 11-14)

```
Q.   Who are your three largest customers today?
A.   Right now we have SA Trading, New Century Media,
     they're the largest, and what else do we have, and
     Fesco, Fesco Sales.  Fesco Sales, I believe, is the
     largest.
```

### SPECIFICATION TWO
### (Page 254, Line 25 - Page 255, Line 11)

```
Q.   Who is the contact person for SA Trading?
A.   Mr. Vega.
Q.   What's his first name?
A.   Carlos.
```

Q.   Have you ever met him?
A.   Yes.
Q.   When?
A.   At the auto show in 2007, calendar year 2007.
Q.   How did SA Trading become a customer?
A.   Came to the booth.  We showed [Carlos Vega] the
     products, and I introduced him to Steven [Moskowitz],
     because I wasn't handling that end of the business.

### SPECIFICATION THREE
(Page 273, Lines 1-8)

Q.   And did you know Ahmed Elsayed —
A.   Ahmed was Dubai [Export Import Company].
Q.   With Dubai, and you knew that name was associated with
     Dubai?
A.   I had met him.   I had met him.
Q.   All right.
A.   I had met him at the show one of the years.

(Title 18, United States Code, Sections 1621(1), 2 and
3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO

30.   The United States hereby gives notice to the
defendants MICHAEL METTER and STEVEN MOSKOWITZ that, upon their
conviction of any of the offenses alleged in Count One or Count
Two, the United States will seek forfeiture in accordance with
Title 18, United States Code, Section 981(a)(1)(C), and Title 28,
United States Code, Section 2461(c), of any and all property,
real and personal, that constitutes or is derived from proceeds
traceable to the commission of the offenses, and all property
traceable to such property, including but not limited to a sum of
money representing the amount of gross proceeds obtained as a
result of the offenses.

15

31.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT FOUR

32.  The United States hereby gives notice to the defendants MICHAEL METTER and STEVEN MOSKOWITZ that, upon their conviction of the offense alleged in Count Four, the government

16

will seek forfeiture in accordance with Title 18, United States Code, Section 982, of all property involved in such offense, and all property traceable to such property, including but not limited to a sum of money representing the amount involved in the offense.

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18,

United States Code, Section 982, to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982)

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

18

FORM DBD-34
JUN 85

No. _____     Action: _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

## THE UNITED STATES OF AMERICA

*vs.*

### *MICHAEL METTER and STEVEN MOSKOWITZ,*

Defendants.

# INDICTMENT

(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18, U.S.C., §§ 371,
981(a)(1)(C), 982, 1505, 1621(1), 1956(h), 2 and 3551
et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
                                                   *Foreman*

*Filed in open court this* _____ *day.*

*of* _____ *A.D. 20* _____

_____
                                                   *Clerk*

*Bail,* $ _____

_____

*Jeffrey A. Goldberg, Assistant U.S. Attorney (718-254-7579)*